**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
JANE DOE,                                              :
                                                       :
                              Plaintiff,               :        Civil Action No.
                                                       :
        v.                                             :
                                                       :        **COMPLAINT**
COLUMBIA UNIVERSITY IN THE CITY OF                     :
NEW YORK; THE NEW YORK AND                             :
PRESBYTERIAN HOSPITAL; and JOHN DOES                   :        **Jury Trial Demanded**
1-100,                                                 :
                                                       :
                              Defendants.              :
------------------------------------------------------------ X

        Plaintiff Jane Doe, by and through counsel Wigdor LLP, alleges against Defendants

Columbia University in the City of New York ("Columbia"), The New York and Presbyterian

Hospital ("NYPH") (together, the "Columbia/NYPH Defendants"), and John Does 1-100 ("John

Doe Defendants") (collectively "Defendants"):

## PRELIMINARY STATEMENT

        1.      Defendants Columbia University and The New York and Presbyterian Hospital

are responsible for the sexual abuse of an unimaginable number of women at the hands of Robert

Hadden ("Hadden") (formerly licensed as an OB/GYN) and for the devastating, lifelong impact

of such abuse.  The Columbia/NYPH Defendants knowingly employed a serial sexual offender

and allowed him to inflict his criminal sexual abuse on his patients for decades, Plaintiff Jane

Doe among them.  The Columbia/NYPH Defendants cannot be heard to claim that they "deeply

regret"[1] the pain these women have suffered when they allowed this to happen and could have

---

[1]     See e.g. Meko, Hurubie, "Columbia University to Pay $165 Million to Victims of Former
Doctor," The New York Times (Oct. 7, 2022) available at:
https://www.nytimes.com/2022/10/07/nyregion/columbia-university-robert-hadden-
settlement.html

prevented it but made the conscious and deliberate decision to not only stand by and do nothing, but to affirmatively coverup Hadden's crimes.

2.      The reality is that as early as 1994, the Columbia/NYPH Defendants were on express, written notice from one of Hadden's OB/GYN patients that he had sexually abused her during a treatment session; yet the Columbia/NYPH Defendants—including numerous people with the ability to take the necessary action—outrageously stood by, disregarded this notice and allowed Hadden to continue abusing patients for almost two decades thereafter until he was arrested in 2012.  Incredibly, even after he was initially arrested, in only further blatant disregard of their legal, ethical and moral obligations, the Columbia/NYPH Defendants allowed Hadden to continue treating patients for several weeks during which time he abused numerous additional women.  The Columbia/NYPH Defendants were more concerned with protecting their institutions, reputations and physicians than carrying out the primary duty of the organizations— to protect the health and safety of their patients.

3.      But that barely even scratches the surface of the Columbia/NYPH Defendants complicity with Hadden and the sexual abuse he engaged in year-after-year while under the Columbia/NYPH Defendants employ.   The Columbia/NYPH Defendants received numerous other notices of Hadden's conduct, and it is expected that more evidence will be revealed that the Columbia/NYPH Defendants turned a willful blind eye to Hadden's conduct.  In short, the Columbia/NYPH Defendants created, condoned, ratified and/or acquiesced to a setting and/or environment in which Hadden was given a safe haven to conduct his criminal acts.

4.      The Columbia/NYPH Defendants' conduct demonstrates an intentional and/or reckless disregard for the lives, health and safety of the patients who trusted and relied on them to provide medical care and protect them from known dangers and abuse.  To say the

Columbia/NYPH Defendants violated the sacred duties owed to patients and the public would be a drastic understatement, as they are responsible for such a vast scope of physical, emotional and psychological harm that it is hard to even comprehend.  The Columbia/NYPH Defendants' conduct must be deterred in the strongest and most unequivocal possible terms to ensure that the Columbia/NYPH Defendants and all other institutions know that permitting, acquiescing to or otherwise condoning sexual abuse will not be tolerated.  Defendants clearly cannot be trusted to police themselves or create any legitimate accountability absent a historically punitive rebuke.

5.      Plaintiff Jane Doe brings this action seeking all available monetary, equitable and injunctive relief for Defendants' statutory and common law violations, including, without limitation, claims for Negligence, violations of the Gender Motivated Violence Act, N.Y.C. Admin. Code § 8-901 *et seq.* ("GMVA"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq*., the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq*. and claims for Assault and/or Battery and Intentional and/or Negligent Infliction of Emotional Distress.  All claims asserted herein are timely under the Adult Survivor's Act, *Civil Practice Law & Rules §214-j* ("ASA").

## INJUNCTIVE RELIEF REQUESTED

6.      In addition to all other relief requested, Plaintiff Jane Doe seeks injunctive relief to ensure that other patients at the Columbia/NYPH Defendants' institutions do not have to suffer the way she and countless others have.  The requested injunctive relief requested includes, but is not limited to:

A.      The imposition of a Court-ordered monitor to ensure that all patient and employee complaints of sexual misconduct by physicians and other employees is handled pursuant to strict guidelines and best practices.

B.  A publicly published independent third-party investigation and report regarding the Columbia/NYPH Defendants' notice of Hadden's conduct and the steps taken in response to any such notice, with such third-party investigation and report to be supervised by the Court-ordered monitor, an advisory panel including Hadden's victims and experts in the field of sexual misconduct.

C.  Public disclosure of all other information (subject to compliance with any privacy laws) regarding sexual misconduct by the Columbia/NYPH Defendants' agents and/or employees and the Columbia/NYPH Defendants' notice of such conduct and actions taken in response thereto.

D.  Creation of and/or revisions to the Columbia/NYPH Defendants' policies and practices with respect to, *inter alia*, mandatory reporting of sexual misconduct, complaint and investigation procedures, disciplinary practices, and anti-retaliation procedures, with such creations and/or revisions to be publicly published and supervised by the Court-ordered monitor.

7.  Absent these, and other, injunctive measures, the Columbia/NYPH Defendants cannot be trusted to protect women and all patients under their care.  The Columbia/NYPH Defendants have already shown that left to their own devices, and without affirmative and comprehensive oversight, they create a clear and present danger and risk the public.

## ADMINISTRATIVE PROCEDURES

8.  Pursuant to NYCHRL § 8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department,

Office of the Corporation Counsel, thereby satisfying the notice requirements of that section.

9.      Any and all other prerequisites to the filing of this suit have been met.

## JURISDICTION, VENUE & LIMITATIONS PERIOD

10.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, due to diversity of citizenship, as the Plaintiff is a resident of Nevada, the Columbia/NYPH Defendants are residents New York, and because this action involves an amount in controversy in excess of $75,000, exclusive of interest and costs.

11.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district, and the Columbia/NYPH Defendants have corporate offices that can be found in this district.

12.     Pursuant to the ASA, a one-year "look back window" has been created for victims of certain sexual offenses to assert claims that may have otherwise been time barred.  The ASA's look back window runs from November 24, 2022, through November 23, 2023.  Defendants' unlawful conduct and the claims asserted herein are all covered by the ASA's expanded time limitations period.

## PARTIES

13.     Plaintiff Jane Doe is a former patient and employee of the Columbia/NYPH Defendants.  Plaintiff resides outside the state of New York.

14.     Defendant Columbia University in the City of New York is a corporation doing business in the State of New York located at 535 West 166th Street, New York, NY 10027.  At all relevant times herein, Columbia was Plaintiff's medical care provider and/or employer, and Hadden's employer.

15.     Defendant The New York and Presbyterian Hospital, or New York-Presbyterian Hospital, is a corporation doing business in the State of New York located at 5141 Broadway, New York, NY 10034.  At all relevant times herein, NYPH was Plaintiff's medical care provider and/or employer, and Hadden's employer.

16.     Defendant John Does 1-100 are currently anonymous individual or corporate Defendants who either acted or omitted to act, with, on behalf of, and/or for, and/or aided and abetted the conduct committed by the Columbia/NYPH Defendants and/or Hadden.  Plaintiff will file an amended pleading at the appropriate time following the identification of such Defendants.

## FACTUAL ALLEGATIONS

### I.     Defendants' Deplorable Failure to Prevent Known and Foreseeable Harm

17.     The Columbia/NYPH Defendants, as a university, hospital and medical services provider, assumed the duty to safely provide medical care to patients and the public.  Yet Columbia/NYPH Defendants utterly breached that duty by allowing Hadden to abuse patients sexually, physically and psychologically under his and the institutions' care and refusing to take even the most basic and minimum steps to ensure patient safety.

18.     The Columbia/NYPH Defendants employed Hadden from approximately 1987 through 2012.  The number of patients Hadden abused during this time is reportedly in the many thousands.  The abuse included, but was not limited to, oral touching (i.e. licking) of women's vaginas; nonconsensual and medically unnecessary digital vaginal and rectal penetration; sexual touching of women's clitorises; fondling, massaging and other manipulation of women's breasts; pinching, squeezing and other manipulation of women's nipples; numerous unnecessary appointments for purposes of engaging in sexual misconduct; numerous unnecessary medical

6

exams and procedures for purposes of engaging in sexual misconduct; and wildly inappropriate and harassing sexually-charged conversations about patient sex lives and masturbation.  But this is just a short and non-exhaustive list of Hadden's patient abuse for which the Columbia/NYPH Defendants are responsible.

19.     The pain, trauma, distress and suffering that has resulted is unimaginably horrific, and has had and will continue to have life altering and life-long consequences for all the women who have been victimized while under the Columbia/NYPH Defendants care.  And it all could have been avoided had the Columbia/NYPH Defendants shown any degree of legitimate care for the well-being of its patients.

20.     As early as 1994, the Columbia/NYPH Defendants were well aware and put on express written notice that Hadden was sexually abusing patients.  There was nothing vague or ambiguous about this notice; to the contrary, it was abundantly and unequivocally clear that Hadden was using his position as an OB/GYN physician to sexually abuse patients.

21.     Specifically, in 1994, Hadden sexually assaulted a patient named Dian Saderup Monson who visited him when she was pregnant with her second child.  On May 30, 1994, Ms. Monson wrote a three-page single-spaced letter to Dr. Harold Fox, the Acting Chair of Columbia's OB/GYN Department, with a copy sent to Columbia's Risk Management Office, in which she detailed how Hadden had sexually assaulted her, including but not limited to, "two separate prolonged breast exams," "pulling very hard on the nipple," and fondling her genitals by "running two fingers up and down [her] inner labia." [2]

---

[2]     See e.g. Black, Nelli, et al., "Exclusive: New Evidence Shows a Patient Warned Columbia University About OBGYN's Alleged Sexual Assault Decades Ago," CNN.com (Deb. 28, 2020), available at: https://www.cnn.com/2020/02/28/politics/columbia-sexual-assault-letter-warning-invs/index.html (video embedded).

22.     Two weeks later, Columbia sent Ms. Monson a letter acknowledging receipt of her complaint—leaving no doubt as to whether Ms. Monson's letter was actually received by the Columbia/NYPH Defendants —and assured her that the hospital would "immediately follow up on your expressed concerns."  Columbia also confirmed that Ms. Monson could "expect a response from [the hospital] sometime around July 1."  However, Ms. Monson has reported that she never heard back from anyone at Columbia.  This alone constitutes an unforgiveable breach of Columbia's legal and ethical obligations, though it is clear this is just one of several instances in which the Columbia/NYPH Defendants were put on notice of Hadden's abuse and did nothing to prevent it.

23.     As another example, it has been reported that between 1992 and 1993, at least one nurse at Columbia who worked with Hadden walked in on him sexually abusing a female patient and reported the abuse to a supervisor.  However, it has been reported that the supervisor's response was to tell the nurse to "keep quiet," and "stay with your doctor' and "don't let him get himself in trouble."

24.     It has also been reported that in or around 1996, a patient complained to an employee of the Columbia/NYPH Defendants that Hadden had rubbed his erect penis on her arm, that he was "a pervert" and that she would not be making any future appointments and would not pay for the visit, to which the receptionist responded, "I know," and "I'm sorry."

25.     It has been reported that another patient asked a nurse why she was not provided a gown, and the nurse responded with a "rolling of her eyes" as if to say, "not again."  It has been reported that another patient experienced a chaperone being ordered out of the room by Hadden prior to an exam, and the chaperone's facial expression was one of, "I know I shouldn't be

leaving," and that she knew she was doing something wrong by leaving Hadden alone with the patient.

26.     It has further been reported that, in or around 1993, a minor patient was examined by Hadden, without a chaperone present.  After Hadden had assaulted the patient, a chaperone entered and instructed the girl to remove her clothing, unaware that Hadden had already violated the child while performing an invasive and unnecessary vaginal and breast exam.  The minor informed the chaperone that "he already did this," to which the chaperone responded that it was impossible because an individual had to be present during OB/GYN examinations.  Instead of reporting Hadden, the chaperone made the minor patient go through the exam with Hadden again.

27.     Not only did the Columbia/NYPH Defendants fail to take action once being put on notice of Hadden's sexual abuse, but they also created an environment where such abuse was condoned, enabled and allowed to happen in the first place.  The Columbia/NYPH Defendants failed to put in place the necessary safeguards to ensure that such abuse would not happen or would be immediately stopped, including by failing to provide appropriate policies, practices, procedures, training and education to medical staff (i.e. nurses, physician's assistants and chaperones).  Absent appropriate safeguards, a serial sexual predator like Hadden was essentially able to sexually abuse patients at will.

28.     On June 29, 2012, Hadden was arrested for, *inter alia*, orally sexually assaulting a patient.  Nonetheless, consistent with the Columbia/NYPH Defendants' failure to hold Hadden accountable for decades, it has been reported that the Columbia/NYPH Defendants assisted Hadden by helping him hire a criminal defense lawyer who got his initial arrest vacated, and that the Columbia/NYPH Defendants then allowed Hadden to return to work the following week,

after which he continued to abuse patients for approximately another six weeks. During this time, Hadden continued to sexually abuse more women and inflict additional harm on numerous patients. The Columbia/NYPH Defendants have only said that they "regret that [Hadden] saw patients for several weeks" following his arrest.[3]

29.     Even thereafter, after Hadden was arrested a second time, on April 24, 2013, the Columbia/NYPH Defendants sent correspondence to Hadden's patients in which they merely stated that his practice had "closed" and offered to provide patients with a referral to an alternate medical provider at the Columbia/NYPH Defendants' medical facilities. This correspondence incredibly omitted that Hadden had been arrested for sexually abusing patients or that the Columbia/NYPH Defendants had been on notice of such abuse for more than two decades, and appears to have been more focused on maintaining patients and minimizing the notice to patients about the sexual abuse that had been taking place on their premises.

30.     In 2014, Hadden was indicted by the Manhattan District Attorney's Office on six felony counts. In 2016, Hadden plead guilty to a single felony count of criminal sexual act in the third degree and a misdemeanor count of forcible touching. He thereafter surrendered his medical license and registered as a sex offender. During the years from 2012 to 2016, there does not appear to have been any notice provided by the Columbia/NYPH Defendants to patients or the public that one of their doctors was accused of sexually assaulting patients. Moreover, during this time, it has been reported that Hadden's professional profile was permitted to remain active online, representing and holding out to the public that he remained an active physician at

---

[3]     See e.g. Colton, Emma, "Former Broadway dancer describes abuse at the hands of disgraced Columbia gynecologist," N.Y. Post (Feb. 10, 2022) available at: https://wstpost.com/former-broadway-dancer-describes-abuse-at-the-hands-of-disgraced-columbia-gynecologist/.

the hospital.  It has also been reported that the Columbia/NYPH Defendants allowed Hadden to maintain and use a Columbia email address until at least 2015, thus holding himself out to the public as a member of this respected institution.

31.     On September 8, 2020, Hadden was indicted for a second time for numerous counts of sexually abusing patients, this time by the U.S. Attorney's Office for the Southern District of New York.  Hadden's federal criminal trial is scheduled to take place in early 2023.

32.     Upon information and belief, the Columbia/NYPH Defendants acted through numerous people and related entities, listed herein as the John Doe Defendants, who engaged in the unlawful conduct described herein and aided-and-abetted the Columbia/NYPH Defendants' unlawful conduct through their intentional, willful, reckless and/or negligent acts.

**II.     <u>Plaintiff Jane Doe's Allegations</u>**

33.     Jane Doe was a patient of Hadden from approximately 1999 through 2012.

34.     Jane Doe was also an employee of the Columbia/NYPH Defendants from approximately 1999 through 2002.

35.     Hadden was considered to be a respected and qualified OB/GYN at one of the country's most respected hospitals.

36.     Jane Doe had never before been treated or examined by an OB/GYN and thus she had no gauge or understanding of "normal" or accepted practice for an OB/GYN physician.

37.     Hadden was aware that Jane Doe lacked familiarity with OB/GYN practices and also took advantage of his inherent position of power and authority over her in the doctor-patient relationship to groom and manipulate her into further trusting and relying upon him and his supposed expertise.

38.     Hadden would draw on this relationship to engage in a course of increasingly abusive conduct all of which was done under the false guise of medical need and/or necessity, which Jane Doe was not in a position to question.

39.     Hadden's conduct, which evolved and increased over time, included, but was not limited to, the following horrific acts:

     A.    <u>Serial and Prolonged Breast Examinations</u>.

        i.    Hadden would subject Jane Doe to serial and prolonged breast examinations which lacked medical reason or necessity.

       ii.    Hadden would perform these examinations without any assistant, nurse or chaperone in the room.

      iii.    Hadden would conduct these exams in a non-clinical manner which would at times be painful.

      iv.    Hadden would, among other unlawful acts, pinch and squeeze Jane Doe's nipples, cup her breasts in his hands, squeeze her entire breasts with his hands and massage her breasts, sometimes both at the same time.

       v.    Hadden would make comments during these examinations about Jane Doe's breasts, including their attractiveness, shape and firmness.

      vi.    Jane Doe never made any complaints or reports which would have necessitated the manner or frequency with which Hadden performed these examinations.

     vii.    Hadden would never explain to Jane Doe why he was performing

the breast examinations in this manner.

    viii.    Hadden performed these unlawful breast examinations in every appointment with Jane Doe, thus constituting dozens of such assaults during the relevant period.

B.    <u>Unnecessary and Abusive Rectal Examinations</u>.

    i.    Hadden would also subject Jane Doe to rectal examinations which lacked medical reason or necessity.

    ii.    Hadden would perform these rectal examinations without any assistant, nurse or chaperone in the room.

    iii.    Hadden would, among other unlawful acts, digitally penetrate Jane Doe's rectum, causing pain to Jane Doe, without explaining any reason or rationale for doing so.

    iv.    Hadden would never explain to Jane Doe why he was performing rectal examinations.

    v.    Jane Doe never made any complaints or reports which would have necessitated the manner in which Hadden performed these rectal examinations.

    vi.    Hadden performed these unlawful rectal examinations in numerous appointments with Jane Doe during the relevant period.

C.    <u>Bogus Spinal/Scoliosis Examinations</u>.

    i.    Hadden would also subject Jane Doe to spinal/scoliosis examinations which lacked medical reason or necessity.

    ii.     Hadden would perform these spinal/scoliosis examinations without any assistant, nurse, or chaperone in the room.

    iii.    Hadden would, among other unlawful acts, direct Jane Doe to stand in front of him with her gown open to the back and would repeatedly run his bares hands up and down her spine, going below her waist to her buttocks, and would ask her to bend over while his hands were touching and rubbing her body.

    iv.    Hadden would never explain to Jane Doe why he was performing spinal/scoliosis examinations other than to falsely say the exams were to check her spine and to look for signs of scoliosis.

    v.    Jane Doe never made any complaints or reports which would have necessitated the need for these spinal/scoliosis examinations.

    vi.    Hadden performed these unlawful spinal/scoliosis examinations in numerous appointments with Jane Doe during the relevant period.

D.    <u>Vaginal Touching and Manipulation.</u>

    i.    Hadden would also subject Jane Doe to vaginal examinations, including a Pap smear and other vaginal examinations, which were a further opportunity for Hadden to engage in sexual assaults.

    ii.    It would only be during the Pap smear that a nurse or chaperone would for the first and only time briefly enter and be present in the examination room, and the only part of the exam for which Hadden would put on gloves.

iii.    After a sample would be collected, the speculum would be removed and the assistant would leave the room, never to return.

iv.    Thereafter, Hadden would continue the vaginal examination without anyone else present, in contravention of the American College of Obstetricians and Gynecologists recommendations and the Columbia/NYPH Defendants' own policy, and he would manipulate Jane Doe's vagina with his fingers in a variety of non-clinical ways, including inserting his fingers into her vagina and moving them back and forth to simulate sex, touching and stroking her labia and touching and stroking her clitoris.

v.    During one examination, Hadden licked Jane Doe's vagina.

vi.    To justify these examinations to Jane Doe, Hadden would sometimes say, in a casual tone, "Oh, there's just something else I wanted to look at," or falsely state that "Something came back from the last exam I want to look at."

vii.    Hadden would never otherwise explain to Jane Doe why he was performing vaginal examinations in this manner or what he was doing during the examination.

viii.    Jane Doe never made any complaints or reports which would have necessitated the manner in which Hadden performed these examinations.

ix.    Hadden performed these unlawful vaginal examinations in dozens of appointments with Jane Doe during the relevant period.

E.    <u>Unnecessary Medical Procedures</u>.

    i.    In addition to the conduct set forth herein, Hadden recommended and directed Jane Doe to have medical procedures which were unnecessary and unwarranted.

    ii.    These medical procedures were done to provide Hadden with further opportunities to sexually abuse Jane Doe.

    iii.    In one such procedure, Hadden took photographs of Jane Doe's excised tissue using his personal cell phone/device and disseminated this image to a third-party without Jane Doe's consent.

    iv.    It was in connection with a vaginal examination following this medical procedure that Hadden licked Jane Doe's vagina.

F.    <u>Sexually Inappropriate Remarks and Conversations</u>.

    i.    Hadden would invite Jane Doe into his office after the examination would conclude and engage in lengthy conversations with her that were intended to generate trust and "closeness" which would allow him to increasingly advance his unlawful conduct.

    ii.    During these conversations, Hadden would engage Jane Doe in conversations that went far beyond any medical reason or necessity and were harassing and offensive.

    iii.    For instance, but only by way of example, Hadden made inappropriate remarks about Jane Doe's appearance and attractiveness; gave Jane Doe unsolicited advice and directives on

16

positions and techniques to achieve orgasms, and drew anatomical pictures to demonstrate these positions and techniques; told Jane Doe to purchase sexual devices to help her achieve orgasms; encouraged her to masturbate; greeted her at appointments by kissing her on the mouth; and subjected her to prolonged hugs, including when she was wearing nothing but a hospital gown.

40.     Hadden's conduct set forth above constitutes only a fraction and short summary of Hadden's sexually abusive conduct committed against Jane Doe.

41.     Hadden's conduct occurred during the scope of his employment with the Columbia/NYPH Defendants, on the Columbia/NYPH Defendants' physical premises and using the Columbia/NYPH Defendants' equipment and property.

42.     Moreover, Jane Doe was an employee of the Columbia/NYPH Defendants for a period of time during which Hadden was sexually abusing her during treatment sessions.

43.     Jane Doe's employment with the Columbia/NYPH Defendants overlapped with and intersected with Hadden's work for the Columbia/NYPH Defendants and they would interact as employees.

44.     As part of her job duties, Jane Doe referred patients who needed OB/GYN treatment to Hadden.  Upon information and belief, Hadden sexually abused patients who Jane Doe referred to him.

45.     During medical appointments, Hadden would speak with Jane Doe regarding work-related matters including about other patients that Jane Doe had referred.  Thus, Jane Doe was effectively engaged in work while in medical appointments with Hadden in which he sexually abused her.

46.     Furthermore, Hadden would speak with Jane Doe about her medical appointments with her when she interacted with him at work.  Thus, Jane Doe was forced to discuss the sexually abusive medical appointments while she was on the job.

47.     As a result, Jane Doe was forced to work in an environment that was permeated with sexual abuse and misconduct by one of her supervisors, Hadden.  Defendants knew or should have known, and could have prevented, this sexually abusive and hostile work environment that Jane Doe was subjected to for years.

### FIRST CAUSE OF ACTION
**Negligence**
***Against the All Defendants***

48.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as though set forth fully herein.

49.     The Columbia/NYPH Defendants owed Plaintiff a duty to use reasonable care to protect her safety, health and well-being while under the Columbia/NYPH Defendants care, custody and supervision.  For the reasons set forth above, amongst others, the Columbia/NYPH Defendants breached this duty.

50.     The Columbia/NYPH Defendants owed Plaintiff a duty to use reasonable care in the hiring, retention and supervision of its employees including, without limitation, its physicians (such as Hadden), its medical staff (including nurses, assistants and chaperones) and all other employees intended to supervise and ensure compliance with legal, medical, ethical and best practices.  For the reasons set forth above, amongst others, the Columbia/NYPH Defendants breached this duty.

51.     The Columbia/NYPH Defendants owed Plaintiff a duty to use reasonable care to implement policies, procedures and practices which would prevent the sexual and other abuse of

patients and protect patients from such abuse.  For the reasons set forth above, amongst others, the Columbia/NYPH Defendants breached this duty.

52.     The Columbia/NYPH Defendants created, condoned, ratified and/or acquiesced to a setting and/or environment in which the conduct set forth herein occurred and/or was permitted.

53.     The Columbia/NYPH Defendants knew and/or should have known that patients, including Plaintiff, were being subjected to sexual assaults and sexual abuse and neither one failed to take appropriate action to put an end to such conduct.

54.     The John Doe Defendants negligently, recklessly and/or willfully failed to take appropriate action and/or affirmatively aided and abetted the Columbia/NYPH Defendants in their unlawful conduct towards Plaintiff.

55.     As a result of the Columbia/NYPH Defendants' conduct, Plaintiff has suffered damages, including but not limited to, physical harm, emotional distress, mental anguish, economic loss and/or special damages, for which she is entitled to an award of all damages applicable by law.

56.     The Columbia/NYPH Defendants' intentional, willful, grossly negligent and/or reckless conduct entitles Plaintiff to an award of punitive damages in the greatest amount permissible by law.

**SECOND CAUSE OF ACTION**
**Violations of the GMVA**
***Against All Defendants***

57.     Plaintiff hereby repeats and realleges each and every allegation in the preceding paragraphs as though set forth fully herein.

58.     Under the GMVA, "any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction."

59.     A "crime of violence" means "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction."

60.     Under the GMVA, "a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender has a cause of action against such party in any court of competent jurisdiction" for such conduct.

61.     By the actions described above, amongst others, Hadden engaged in a "crime of violence" and a "crime of violence motivated by gender."

62.     By the actions and omissions described above, amongst others, the Columbia/NYPH Defendants enabled, participated in and/or conspired in "a crime of violence motivated by gender."

63.     The John Doe Defendants negligently, recklessly and/or willfully failed to take appropriate action and/or affirmatively aided and abetted the Columbia/NYPH Defendants in their unlawful conduct towards Plaintiff.

64.     As a result of Defendants' conduct, Plaintiff has suffered damages, including but not limited to, physical harm, emotional distress, mental anguish, economic loss and/or special damages, for which she is entitled to an award of all damages applicable by law.

65.     Defendants' intentional, willful, grossly negligent and/or reckless conduct entitles Plaintiff to an award of punitive damages in the greatest amount permissible by law.

### THIRD CAUSE OF ACTION
**Violations of NYSHRL**
**Discrimination in a Place of Public Accommodation**
***Against All Defendants***

66.     Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs as if set forth fully herein.

67.     NYSHRL prohibits discrimination in places of "public accommodation" on the basis of, *inter alia*, gender.  The Columbia/NYPH Defendants institutions, and any affiliate institution thereof, constitute a "place of public accommodation" under applicable law.

68.     By the actions and omissions described above, amongst others, the Columbia/NYPH Defendants failed to provide an environment free from discrimination, harassment, sexual abuse and sexual misconduct in numerous forms.

69.     By the actions and omissions described above, amongst others, the Columbia/NYPH Defendants created, condoned, ratified and/or acquiesced to a setting and/or environment which fostered, allowed and/or permitted discrimination, harassment, sexual abuse and sexual misconduct in numerous forms.

70.     The John Doe Defendants negligently, recklessly and/or willfully failed to take appropriate action and/or affirmatively aided and abetted the Columbia/NYPH Defendants in their unlawful conduct towards Plaintiff.

71.     As a result of Defendants' conduct, Plaintiff has suffered damages, including but not limited to, physical harm, emotional distress, mental anguish, economic loss and/or special damages, for which she is entitled to an award of all damages applicable by law.

72.     Defendants' intentional, willful, grossly negligent and/or reckless conduct entitles Plaintiff to an award of punitive damages in the greatest amount permissible by law.

**FOURTH CAUSE OF ACTION**
**Violations of NYCHRL**
**Discrimination in a Place of Public Accommodation**
***Against All Defendants***

73.     Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs as if set forth fully herein.

74.     NYCHRL prohibits discrimination in places of "public accommodation" on the basis of, *inter alia*, gender.  The Columbia/NYPH Defendants' institutions, and any affiliate institution thereof, constitute a "place of public accommodation" under applicable law.

75.     By the actions and omissions described above, amongst others, the Columbia/NYPH Defendants failed to provide an environment free from discrimination, harassment, sexual abuse and sexual misconduct in numerous forms.

76.     By the actions and omissions described above, amongst others, the Columbia/NYPH Defendants created, condoned, ratified and/or acquiesced to a setting and/or environment which fostered, allowed and/or permitted discrimination, harassment, sexual abuse and sexual misconduct in numerous forms.

77.     The John Doe Defendants negligently, recklessly and/or willfully failed to take appropriate action and/or affirmatively aided and abetted the Columbia/NYPH Defendants in their unlawful conduct towards Plaintiff.

78.     As a result of Defendants' conduct, Plaintiff has suffered damages, including but not limited to, physical harm, emotional distress, mental anguish, economic loss and/or special damages, for which she is entitled to an award of all damages applicable by law.

79.     Defendants' intentional, willful, grossly negligent and/or reckless conduct entitles Plaintiff to an award of punitive damages in the greatest amount permissible by law.

**FIFTH CAUSE OF ACTION**
**New York State Human Rights Law**
**Discrimination, Sexual Harassment and Hostile Work Environment**
***Against All Defendants***

80.     Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs as if set forth fully herein.

81.     By the actions and omissions described above, amongst others, the Columbia/NYPH Defendants discriminated against Plaintiff as an employee in violation of the NYSHRL by subjecting her to discrimination, sexual harassment and/or a hostile work environment.

82.     By the actions and omissions described above, amongst others, the Columbia/NYPH Defendants created, condoned, ratified and/or acquiesced to a setting and/or environment which fostered, allowed and/or permitted discrimination, sexual harassment and/or a hostile work environment.

83.     The John Doe Defendants negligently, recklessly and/or willfully failed to take appropriate action and/or affirmatively aided and abetted the Columbia/NYPH Defendants in their unlawful conduct towards Plaintiff.

84.     As a result of Defendants' conduct, Plaintiff has suffered damages, including but not limited to, physical harm, emotional distress, mental anguish, economic loss and/or special damages, for which she is entitled to an award of all damages applicable by law.

85.     Defendants' intentional, willful, grossly negligent and/or reckless conduct entitles Plaintiff to an award of punitive damages in the greatest amount permissible by law.

## SIXTH CAUSE OF ACTION
### Violations of NYCHRL
### Discrimination, Sexual Harassment and Hostile Work Environment
### *Against All Defendants*

86.     Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs as if set forth fully herein.

87.     By the actions and omissions described above, amongst others, the Columbia/NYPH Defendants discriminated against Plaintiff as an employee in violation of the NYCHRL by subjecting her to discrimination, sexual harassment and/or a hostile work environment.

88.     By the actions and omissions described above, amongst others, the Columbia/NYPH Defendants created, condoned, ratified and/or acquiesced to a setting and/or environment which fostered, allowed and/or permitted discrimination, sexual harassment and/or a hostile work environment.

89.     The John Doe Defendants negligently, recklessly and/or willfully failed to take appropriate action and/or affirmatively aided and abetted the Columbia/NYPH Defendants in their unlawful conduct towards Plaintiff.

90.     As a result of Defendants' conduct, Plaintiff has suffered damages, including but not limited to, physical harm, emotional distress, mental anguish, economic loss and/or special damages, for which she is entitled to an award of all damages applicable by law.

91.     Defendants' intentional, willful, grossly negligent and/or reckless conduct entitles Plaintiff to an award of punitive damages in the greatest amount permissible by law.

## SEVENTH CAUSE OF ACTION
### Assault and Battery
### *Against All Defendants*

92.     Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs as if set forth fully herein.

93.     Hadden's violent and criminal acts committed against Plaintiff amounted to a series of harmful and offensive contacts to the person of Plaintiff all of which were done intentionally by Hadden without Plaintiff's consent.

94.     Hadden's violent and criminal acts committed against Plaintiff amounted to a series of events creating a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to Plaintiff's person, all of which were done intentionally by Hadden and without Plaintiff's consent.

95.     For the reasons set forth herein, the Columbia/NYPH Defendants are vicariously liable for Hadden's intentional conduct and/or liable through the doctrine of *Respondeat Superior* and/or responsible through any and all agency principles.

96.     As a result of Defendants' conduct, Plaintiff has suffered damages, including but not limited to, physical harm, emotional distress, mental anguish, economic loss and/or special damages, for which she is entitled to an award of all damages applicable by law.

97.     Defendants' intentional, willful, grossly negligent and/or reckless conduct entitles Plaintiff to an award of punitive damages in the greatest amount permissible by law.

## EIGHTH CAUSE OF ACTION
### Intentional and/or Negligent Infliction of Emotional Distress
### *Against All Defendants*

98.     Plaintiff hereby repeats and re-alleges each and every allegation in paragraphs as if set forth fully herein.

99.     By the actions and omissions described above, amongst others, Defendants have engaged in extreme and outrageous conduct, with the intent to cause, or a disregard for the substantial probability of causing, severe emotional distress.

100.    By the actions and omissions described above, amongst others, Defendants breached a duty owed to Plaintiff protect her safety, health and well-being while under Defendants' care, custody and supervision.

101.    As a direct and proximate result of Defendants' unlawful conduct Plaintiff has suffered, and continues to suffer, severe emotional distress and mental anguish for which she is entitled to an award of damages.

102.    Defendants' intentional, reckless, malicious, willful and wanton conduct entitles Plaintiff to an award of punitive damages to the greatest extent permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A.      A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the State of New York;

B.      An injunction and order permanently restraining the Columbia/NYPH Defendants and their officers, officials, agents, successors, employees and/or representatives, and any and all persons acting in concert with and/or on behalf of them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C.      An injunction and order requiring the Columbia/NYPH Defendants to take appropriate action to protect patients and employees, prevent sexual abuse and provide avenues for prompt and immediate corrective action, with such measures to include, but not be limited to, the measures set forth above in Paragraph 6(A)-(D).

D.      An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

E.      An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her physical injuries, emotional distress and/or mental anguish;

F.      An award of punitive damages and any applicable penalties in an amount to be determined at trial;

G.      Prejudgment interest on all amounts due;

H.      An award of fees and costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

I.      Such other and further relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: December 7, 2022
New York, New York                    Respectfully submitted,

**WIGDOR LLP**

By: _____
David E. Gottlieb
Laura E. Edidin

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dgottlieb@wigdorlaw.com
ledidin@wigdorlaw.com

*Counsel for Plaintiff Jane Doe*